IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

Plaintiff,

Vs.                                                    No.  06-40028-01-SAC

THOMAS M. EGAN,

Defendant.


MEMORANDUM AND ORDER

The case comes before the court on the defendant's pretrial motion to suppress evidence found in the rental truck in which he was riding on January 15, 2006.  (Dk. 12).  The government has filed a response opposing the motion. (Dk. 31).  The parties presented evidence and oral argument in support of their positions on June 28, 2006.  During the hearing, the court granted the defendant's request for leave to ask the court by July 12, 2006, to supplement the record with additional expert witness testimony.  By letter filed July 12, 2006, the defendant asked to submit the testimony of an expert witness, John C. Glennon, Jr.  (Dk. 40).  The government opposed the defendant's request.  (Dk. 39).  On August 20, 2006, the defendant presented Mr. Glennon as a witness.  Following this testimony and hearing, the parties then submitted the motion without further argument or briefs.

Having reviewed all matters submitted and having researched the relevant law, the court is ready to rule on the motions.

**INDICTMENT**

The defendant Thomas M. Egan and his co-defendant Tamera Cardenas are charged in a two-count indictment with violating 21 U.S.C. § 841(a)(1) on January 15, 2006, in the District of Kansas, first by conspiring to distribute and possess with the intent to distribute 214 kilograms of marijuana and, second by possessing with the intent to distribute the same marijuana.

**FACTS**

Deputy Tracey Trammel with the Shawnee County Sheriff's Office was patrolling I-70 Highway on the morning hours of January 15, 2006.  Deputy Trammel observed a moderate amount of traffic.  Though there was some wind on this brisk winter morning, he did not notice vehicles having difficulty maintaining a single lane because of the wind.  Around 10:30 a.m., Deputy Trammel was following a yellow Penske rental truck traveling eastbound on I-70.  He became concerned by what he described as the rental truck weaving and being driven erratically.  The passenger-side tires of the rental truck crossed onto and over the fog line two or three times.  He decided to initiate a traffic stop when the last time the truck swerved onto the shoulder, both tires of the rear dual set went across the

fog line.  Deputy Trammel testified he stops vehicles under these circumstances in part to determine whether the driver is impaired or tired or whether there is a mechanical problem.

Deputy Trammel activated his emergency lights signaling the rental truck directly in front of him to stop.  The truck is slow to pull over crossing the fog line several more times before finally going onto the shoulder and stopping. Deputy Trammel makes contact with the woman driving the truck.  The passengers are a teenage girl and an adult male.  Besides the strong smell of a car deodorizer, Trammel immediately noticed the driver's hands were shaking and the male passenger did not look at him.  He asked to see a driver's license, registration, and rental agreement.  The Deputy then asked the driver, Ms. Tamera Cardenas, to join him outside at the rear of the truck where he explained the purpose of the stop. Ms. Cardenas conceded she had been crossing onto the fog line but offered that she had been staying close to the side because gusts of wind would push the truck towards the center.  After a few more questions about travel plans, Deputy Trammel went to the passenger, Thomas Egan, and asked for identification and a few questions about travel plans.  Deputy Trammel eventually received consent to search the truck from both Ms. Cardenas and the defendant, Mr. Egan.  The search of the truck revealed bundles of marijuana hidden in several couches stored in the

3

back of the truck.  The marijuana weighed approximately 214 kilograms.

**DEFENDANT'S CONTENTION**

The defendant's only asserted ground for his suppression motion is that Deputy Trammel lacked reasonable suspicion of a traffic violation in order to conduct a traffic stop.  The defendant contends Deputy Trammel lacked an objectively reasonable belief that the rental truck was not operated "as nearly as practicable entirely within a single lane," as required by the terms of K.S.A § 8-1522,  The combination of the rental truck's high and broad profile and the gusty winds "made it very difficult to keep this large truck within the marked lane."  (Dk. 12, p. 5).  The defendant characterizes the truck's repeated crossings of the fog lines as minor deviations which could not be practicably prevented under the circumstances.

The defendant offered into evidence meteorological records on file in the National Climatic Data Center showing hourly wind speeds, gusts and directions as measured at four different weather stations proximate to the traffic stop.[1]  The defendant also called John Glennon, as an expert witness, who testified

---

[1] The surface weather observations were made at four different stations identified by the nearest city and by latitude and longitude.  There was no testimony identifying the specific distances between the location of the traffic stop and the different weather stations.  The hourly wind speeds appearing on the report are measured in knots.  The website for the National Climatic Data Center of the

on such matters as the intended use of a single white line as a fog line, the purposes

of a road shoulder, and some of the circumstances for lawfully crossing a fog line

and encroaching upon the shoulder.  Mr. Glennon discussed certain variables that

can influence a truck driver's ability to maintain a single lane of traffic.  Mr.

Glennon opined that trucks frequently pass over the fog line.  After reviewing the

wind speed data and the videotape of the stop and visiting the scene of the traffic

stop, Mr. Glennon concluded that it would have been difficult on this particular

day for a person operating this rental truck to maintain a single lane of traffic.

**GOVERNING LAW**

A traffic stop is a seizure under the Fourth Amendment.  *United States*

*v. Taverna*, 348 F.3d 873, 877 (10th Cir. 2003).  Akin to investigative detentions,

routine traffic stops are analyzed under the investigative detention principles

outlined in *Terry v. Ohio*, 392 U.S. 1 (1968).  *United States v. Hunnicutt*, 135 F.3d

1345, 1348 (10th Cir. 1998).  The reasonableness of a stop is a dual inquiry: (1)

"whether the officer's action was justified at its inception," and (2) whether the

---

United States Department of Commerce gives a conversion table of 1 knot equal to
1.1515 miles.  For the time of 10:53 a.m. on January 15, 2006, approximately 20
minutes after the traffic stop approximately two miles west of Topeka, both
Topeka stations reported a wind speed of 13 knots per hour or approximately 15
miles per hour, and one of these two stations reported gusts of 21 knots per hour or
24 miles per hour.

officer's action "was reasonably related in scope to the circumstances that first justified the interference." *United States v. Burch*, 153 F.3d 1140, 1141 (10th Cir. 1998) (quotation omitted).

In deciding the validity of the initial stop, the court looks at whether it was "objectively justified." *United States v. Botero-Ospina*, 71 F.3d 783, 788 (10th Cir. 1995) (en banc), *cert. denied*, 518 U.S. 1007 (1996).  To be reasonable under the Fourth Amendment, "a law enforcement officer 'must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping an automobile.'" *United States v. Alvarado*, 430 F.3d 1305, 1308 (10th Cir. 2005) (quoting *United States v. Cervine*, 347 F.3d 865, 869 (10th Cir. 2003)).  The constitutional reasonableness of a traffic stop does not depend on the officer's actual motive in conducting the stop. *Whren v. United States*, 517 U.S. 806, 812-13 (1996).  "Thus, 'when evaluating the reasonableness of the initial stop of a vehicle, our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Alvarado*, 430 F.3d at 1308 (quoting *United States v. Zabalza*, 346 F.3d 1255, 1258 (10th Cir. 2003)).  "This standard expressly leaves to 'the state legislatures the task of determining what the traffic laws ought to be, and how those laws ought

6

to be enforced.'" *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004)

(quoting *United States v. Botero-Ospina*, 71 F.3d at 787).

The Tenth Circuit recently summarized the law relevant to the

reasonable suspicion standard to be applied in the context of traffic stops:

> Reasonable suspicion requires that an officer provide "some minimal level
> of objective justification." *I.N.S. v. Delgado*, 466 U.S. 210, 217, 104 S. Ct.
> 1758, 80 L. Ed. 2d 247 (1984).  However, an officer with reasonable
> suspicion need not "rule out the possibility of innocent conduct" as long as
> the totality of the circumstances suffices to form "a particularized and
> objective basis" for a traffic stop. *United States v. Arvizu*, 534 U.S. 266,
> 277-78, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (citation omitted).
> Moreover, reasonable suspicion may be supported by an "objectively
> reasonable" good faith belief even if premised on factual error. *See United
> States v. Walraven*, 892 F.2d 972, 974-75 (10th Cir. 1989) (quotation
> omitted).  Finally, reasonable suspicion may rely on information less reliable
> than that required to show probable cause, *Alabama v. White*, 496 U.S. 325,
> 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990), and it need not be correct.
> *See United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001)
> (upholding a traffic stop based on a reasonable articulable suspicion that a
> cracked windshield substantially obstructed the driver's view--the standard
> required by statute-- regardless of whether or not the crack actually
> constituted a violation of the law); *United States v. Allegree*, 175 F.3d 648,
> 650 (8th Cir. 1999) (upholding a traffic stop based on the mistaken, yet
> reasonable, belief that defendant had illegal headlights).

*United States v. Vercher*, 358 F.3d at 1261.

The pertinent traffic statute states: "A vehicle shall be driven as nearly

as practicable entirely within a single lane and shall not be moved from such lane

until the driver has first ascertained that such movement can be made with safety."

K.S.A. § 8-1522.  Thus, the narrow issue before the court is whether Deputy

Trammell had objectively reasonable suspicion that the rental truck was not being

"operated as nearly as practicable entirely within a single lane" in violation of

K.S.A. § 8-1522 when taking into consideration the size and profile of the truck

and the weather conditions he observed the truck crossing the fog line two or three

times with both tires of the dual set crossing the fog line on the last time.

In *United States v. Gregory*, 79 F.3d 973, 978 (10th Cir. 1996), the

court considered whether a traffic stop of a truck for failure to maintain a single

lane was reasonable when the truck "briefly crossed into the right shoulder

emergency lane" where "[t]he road was winding, the terrain mountainous and the

weather condition was windy."  79 F.3d at 978.  The court found the stop

unreasonable because the statutory duty to drive in a single lane was "as nearly as

practical" and the particular weather and road conditions were such that "any

vehicle could be subject to an isolated incident of moving into the right shoulder of

the roadway, without giving rise to a suspicion of criminal activity."  *Id.*  The

Tenth Circuit has clarified in subsequent decisions that *Gregory* does not create a

rule that exempts a single act of drifting onto shoulder from traffic laws but it does

emphasize the court's "need to analyze objectively all the surrounding facts and

circumstances to determine whether the officer had the probable cause necessary to

justify the stop." *United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999)(upholding probable cause when the motor home drifted twice "onto the shoulder within a quarter mile under optimal road, weather and traffic conditions."); *see United States v. Alvarado*, 430 F.3d at 1308 (upholding reasonable suspicion when Jeep Cherokee crossed over fog line once and there were no objective factors, like weather or road conditions, that "might have made it impractical . . . to remain in a single lane."); *United States v. Cline*, 349 F.3d 1276, 1285-87 (10th Cir. 2003) (upholding articulable suspicion when pickup crossed shoulder line one time and there was no proof that wind or other conditions caused the pickup to swerve); *United States v. Rodriguez*, 215 F.3d 1338, 2000 WL 639581 (10th Cir. May 18, 2000) (upholding probable cause where car swerved onto shoulder twice under windy conditions and concluding "that the windy weather conditions alone in this case do not distinguish it from *Ozbirn*.").  To reiterate, the court's role is not to decide whether the facts are sufficient to sustain a conviction under the K.S.A. § 8-1522 but whether they "are adequate to form an objectively reasonable suspicion that" the rental van was being operated in violation of this statute.  *United States v. Vercher*, 358 F.3d at 1260.  This is "a context-specific inquiry to evaluate whether the historical facts, 'viewed from the standpoint of any objectively reasonable police officer,' *Ornelas*, 517 U.S. at 696,

establish a minimal basis for reasonable suspicion." *Id.* at 1262.

**ANALYSIS**

There is enough persuasive evidence of record from which to find that there was some wind, even gusting winds, at the time of the traffic stop and that this wind would impact the operation of the truck because of its profile and size. Likewise, the combination of the rental truck's profile and the gusting winds is an objective factor that might have made it more difficult for Ms. Cardenas to keep the truck from drifting occasionally onto the fog line. The court, however, is not persuaded that a reasonable officer here would have lacked reasonable suspicion to stop the rental truck.

The rental truck here drifted over the fog line two or three times in a span of a mile or less, and on the last time, the truck swerved onto the shoulder with both tires on the rear dual set going across the fog line. After seeing this last "major swerve" onto the shoulder, Deputy Trammel decided to stop the rental truck. Deputy Trammel testified that he had not seen any other vehicles having the same difficulty in maintaining a single lane as this rental truck was having. Deputy Trammel opined that the wind was not cause of the erratic driving he witnessed. None of the evidence, in particular the video recording, shows the wind was of such a speed that it would have caused the major swerve onto the shoulder

10

witnessed by Deputy Trammel. *See United States v. Olivas,* 351 F. Supp. 2d 1180, 1184 (D. Kan. 2004).  Nothing about the road conditions or the terrain should have affected the truck's operation.  This erratic driving also caused Deputy Trammel to be concerned that the driver could be impaired or tired or that the rental truck was having mechanical problems.  The reasonable suspicion analysis is not a license to conduct unrealistic second-guessing of police officers, to ignore the appropriate deference due trained officers, or to require that Deputy Trammel have followed the rental truck longer, deliberated more fully about the effect of wind on this particular truck, and estimated the degree to which the gusting wind may have caused the particular driving maneuvers.  *See United States v. Vercher*, 358 F.3d at 1262.  Having seen the truck repeatedly cross the fog line and on the last time both tires of the dual set swerve entirely across the fog line, Deputy Trammel had objectively reasonable suspicion that K.S.A. § 8-1522 had been violated.[2] Given this finding, the court holds that the initial stop of the rental truck was justified and reasonable.

IT IS THEREFORE ORDERED that the defendant's pretrial motion

---

[2]Alternatively, the court finds that Deputy Trammel upon seeing the erratic driving had reasonable suspicion to conduct a safety stop for possible intoxication or fatigue, as allowed under Kansas law. *See State v. Vistuba*, 251 Kan. 821, 840 P.2d 511 (1992).

to suppress evidence found in the search of the vehicle he was riding on January

15, 2006, (Dk. 12) is denied.

Dated this 25th day of August, 2006, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge